## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF CONNECTICUT
### HARTFORD DIVISION

| | |
|---|---|
| In re:<br><br>Erica J. Preston,<br>        Debtor | Chapter 13<br><br>Case No. 24-21009 (JJT) |
| Erica J. Preston,<br>        Plaintiff<br><br>v.<br><br>Nationstar Mortgage LLC,<br>        Defendant | Adv. Pro. No. 24-02016 (JJT)<br><br><br>Re: ECF Nos. 1, 8, 18, 20 |

## MEMORANDUM OF DECISION AND
## ORDER GRANTING IN PART AND DENYING
## IN PART DEFENDANT'S MOTION TO DISMISS

On October 23, 2024, the Plaintiff, Erica J. Preston, filed for Chapter 13 bankruptcy protection and commenced this Adversary Proceeding the same day. In her Complaint (ECF No. 1), the Plaintiff asks the Court to avoid the transfer of her principal residence at 1346 Route 169, Woodstock, Connecticut (the "Property") as either a preferential or fraudulent transfer. She also asserts a claim for unjust enrichment. Nationstar Mortgage LLC ("Nationstar") filed a Motion to Dismiss on January 7, 2025 (ECF No. 8). The Court held a pre-trial conference on January 30, 2025, at which counsel for both Nationstar and the Plaintiff appeared. On February 21, 2025, the Plaintiff filed her response to the Motion to Dismiss (ECF No. 18). On March 7, 2025, Nationstar filed its reply to the Plaintiff's response (ECF No. 20).

For the following reasons, the Motion to Dismiss is GRANTED in part and DENIED in part.

### 1. Background

On December 4, 2023, Nationstar filed a foreclosure action against the Plaintiff in the Superior Court of Connecticut.[1] After the Plaintiff failed to appear, Nationstar filed a Motion for Default, which the Superior Court granted. Nationstar then filed a Motion for Judgment of Strict Foreclosure. On March 18, 2024, after notice and a hearing, the Superior Court entered a Judgment of Foreclosure by Sale providing that an auction sale was to take place on June 22, 2024. Therein, the Superior Court found the fair market value of the Property to be $335,000.00 with the mortgage debt at $135,266.38. On June 12, 2024, the Committee of Sale appointed by the Superior Court filed an appraisal asserting that the Property's value was $285,000.00 as of May 31, 2024.

On or before July 11, 2024, Nationstar bid to purchase the Property at the foreclosure sale. Nationstar's winning bid was for only $146,853.41 – 51.53% of the Property's appraised value. That same day, the Committee filed a Motion for Approval of Committee Sale, which the Court granted on July 29, 2024. No objection was interposed. Four days earlier, however, on July 25, 2024, the Plaintiff filed a Motion to Open and Modify Judgment, which the Superior Court later denied on September 9, 2024. On or about August 19, 2024, Nationstar acquired title to the

---

[1] The Court takes judicial notice of this proceeding. *See Nationstar Mortg., LLC v. Erica J. Preston*, No. WWM-CV23-6028236-S (Conn. Super. Ct.). The Court also takes judicial notice of a related eviction proceeding. *See Nationstar Mortg., LLC v. Erica J. Preston, et al*, No. WWM-CV24-6031102-S (Conn. Super. Ct.).

Property at a closing. On October 21, 2024, Nationstar filed a Motion for Supplemental Judgment apprising the Superior Court that the closing on the foreclosure sale had taken place and additionally seeking the Court's ratification of that sale. The Court entered a Supplemental Judgment on November 4, 2024, ratifying and confirming the sale and affording other relief.[2] No objections were interposed to the aforesaid Motion, nor were any appeals or motions for stay filed by the Debtor. The foreclosure judgment Sale Approval Order and Supplemental Judgment are otherwise final.

The Plaintiff's Complaint herein "seeks to avoid and recover for the benefit of the [bankruptcy] estate a preferential transfer and/or a fraudulent conveyance of the Debtor's property made to or for the benefit of [Nationstar] on or within ninety (90) days of the Petition Date." The Complaint alleges four counts against Nationstar: 1) avoidance of a preferential transfer pursuant to 11 U.S.C. § 547, 550, and 551; 2) avoidance of a constructively fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B); 3) avoidance of a fraudulent transfer pursuant to Connecticut General Statutes § 52-552e(a); and 4) restitution for an unjust enrichment claim. In seeking to avoid this transfer, the Plaintiff requests that the Court enter judgment against Nationstar for the differential value of the Property plus fees and costs, and such other and further relief as justice requires.

---

[2] Therein, the Court explicitly found that: 1) the mortgaged premises were not redeemed; 2) the premises had been sold by the person appointed for that purpose; 3) the person appointed had executed and submitted for approval of the Superior Court a conveyance of said premises to Nationstar; 4) the expenses of the sale totaled $7,529.07; 5) the proceeds of the sale, totaling $149,708.16, were due to Nationstar; and 6) Preston was in possession of the premises.

On January 7, 2025, Nationstar filed a Motion to Dismiss the Adversary Proceeding (ECF No. 8). Therein, Nationstar contends that the Adversary Proceeding is barred by the doctrines of res judicata, collateral estoppel, and the *Rooker–Feldman* doctrine. Specifically, Nationstar asserts that "[a]ll Counts of the Complaint should be dismissed with prejudice because . . . the Plaintiff is attempting a collateral attack on the final foreclosure judgment issued by the Connecticut Superior Court in which [Nationstar] was the successful bidder at a duly authorized foreclosure auction, approved by the Connecticut Superior Court, to which no timely Appeal [has been] taken" by the Debtor.

Nationstar further contends that the Complaint fails to state a claim upon which relief can be granted. In the First Count alleging a preferential transfer pursuant to 11 U.S.C. § 547, 550, and 551, Nationstar contends that a "debtor is unable to avoid, as a preferential transfer, a prepetition mortgage foreclosure sale conducted in accordance with state law and that the price received at the regularly conducted foreclosure sale constituted 'reasonably equivalent value' for the property transferred . . . ." Further, it argues "that a successful bid at a foreclosure sale established the property's 'forced sale' value, such that [Nationstar] did not receive more as a result of the foreclosure sale than it would have in a hypothetical Chapter 7 liquidation."

Regarding the Second and Third Counts alleging a fraudulent conveyance pursuant to 11 U.S.C. § 548(a)(1)(B) and Connecticut General Statutes § 52-552e(a), Nationstar asserts that the United States Supreme Court's decision in *BFP v. Resol.*

4

*Tr. Corp.*, 511 U.S. 531, 545 (1994) held that "a 'reasonably equivalent value' [under 11 U.S.C. § 548(a)(1)(B)(i)] for foreclosed real property is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." As "in the instant case . . . the Plaintiff does not allege . . . any issues with the regularly conducted state court foreclosure sale in this matter," Nationstar asserts that the United States Supreme Court's holding in *BFP* is dispositive of this matter.

With regard to the Fourth and final Count for unjust enrichment, Nationstar contends that "[t]he Plaintiff simply makes a conclusory statement that [Nationstar] was unjustly enriched in receiving [the] transfer but fails to address that the foreclosure sale was properly held and approved . . . ." Nationstar further asserts that "[t]he conclusion that the approval of a foreclosure sale, which prompted and approved the transfer to [Nationstar,] created unjust enrichment is improper and conclusory, as it was the Plaintiff who defaulted on the underlying loan causing the underlying foreclosure action to be brought in the first place."

On February 21, 2025, the Plaintiff filed her response to the Motion to Dismiss (ECF No. 18).[3] Therein, the Plaintiff asserts that "the [Superior Court] abused its discretion in approving the [M]otion for [A]pproval of the [C]ommittee [S]ale and [D]eed" because the Court waited until after the appeal period expired on its order approving the sale to enter its order denying the Motion to Reopen. The Plaintiff further contends that her claims are not barred by res judicata, collateral

---

[3] Motions to extend time to file the Plaintiff's objection were granted. See ECF Nos. 15, 16, 17.

estoppel, or the *Rooker–Feldman* doctrine. In response, she relies upon her status as a self-represented litigant before the Superior Court, the unfairness of the transaction, and the alleged error in the Superior Court's decision to issue its ruling on the Motion to Open and Modify Judgment after the appeal period expired on its Judgment of Foreclosure by Sale in alleged violation of Connecticut Practice Book § 61-11(h).[4] Further, the Plaintiff asserts that Nationstar "is mistaken that the Plaintiff is attempting to collaterally attack the foreclosure judgment. The Plaintiff asserts that she is not attempting to re-litigate the foreclosure judgment," but instead "is attempting to set aside the judgment and/or seek a monetary judgment pursuant to the provisions of Chapter 5 of the United States Bankruptcy Code, primarily 11 U.S.C. §§547(b), 548(a) and 550."

Regarding Nationstar's assertion that the Plaintiff has failed to state a claim, the Plaintiff responds that "[w]hile [she] acknowledges [that she] has an uphill battle in her constructive fraud contentions under 11 U.S.C. [§ 548(a)(1)(B)] due to the holding [of *BFP*], . . . the results of [the *BFP* decision] would be harsh based on the facts of this case" and, further, that the Supreme Court's reasoning in *BFP* does not apply to her preference claim under 11 U.S.C. § 547(b).

---

[4] Connecticut Practice Book § 61-11(h) reads:

> (h) Foreclosure by sale—motion rendering ineffective a judgment of foreclosure by sale
>
> In any action for foreclosure in which the owner of the equity has filed a motion to open or other similar motion, which motion was denied fewer than twenty days prior to the scheduled auction date, the auction shall proceed as scheduled notwithstanding the court's denial of the motion, but no motion for approval of the sale shall be filed until the expiration of the appeal period following the denial of the motion without an appeal having been filed. The trial court shall not vacate the automatic stay following its denial of the motion during such appeal period.

6

On March 7, 2025, Nationstar filed its reply to the Plaintiff's Objection (ECF No. 20). Therein, Nationstar contends that the Plaintiff is indeed trying to collaterally attack the Superior Court judgment and that the Superior Court did not err or violate Connecticut Practice Book § 61-11(h) when it issued its decision on the Motion to Open and Modify Judgment after the appeal period expired on its Judgment of Foreclosure by Sale. Regarding the Plaintiff's preference claim and the split of case law on this issue, Nationstar asserts that the Plaintiff has failed to address those cases that do not support the conclusion that this foreclosure sale constitutes a preferential transfer. Nationstar further contends that should the "Bankruptcy Court find that a validly held public foreclosure sale that followed all state laws and procedures can still yield a claim against the foreclosing party for a preferential transfer, such a holding [would] send shockwaves through the state foreclosure world" to the prejudice of foreclosing parties.

## 2. **Jurisdiction**

The United States District Court for the District of Connecticut has jurisdiction over the instant proceedings under 28 U.S.C. § 1334(b), and the Bankruptcy Court derives its authority to hear and determine this matter on reference from the District Court under 28 U.S.C. § 157(a) and (b)(1) and the General Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

### 3. Discussion

#### a. Subject Matter Jurisdiction

Under Rule 12(b) of the Federal Rules of Civil Procedure, as applied by Rule 7012 of the Federal Rules of Bankruptcy Procedure, a party to an adversary proceeding may assert by motion, among other things, the defenses of lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1), (6). "Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the [trial] court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *Anderson v. Derby Bd. of Educ.*, 718 F. Supp. 2d 258, 264 (D. Conn. 2010); *In re Salvatore*, 586 B.R. 371, 374 (Bankr. D. Conn. 2018).

The "*Rooker–Feldman* [doctrine] directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites [federal] court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010) (quoting *Hoblock v. Albany Cnty Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)). The doctrine is narrow and "does not apply when a federal statute specifically authorizes a lower federal court to vitiate a state court judgment." *See In re Martyak*, 432 B.R. 25, 30 (Bankr. N.D.N.Y. 2010)

(quoting *Hopkins v. Foothill Mt., Inc.* (*In re Hopkins*), 346 B.R. 294, 302 (Bankr. E.D.N.Y. 2006) (collecting cases)); *In re Philadelphia Ent. & Dev. Partners*, 879 F.3d 492, 503 (3d Cir. 2018); *In re Jadeco Constr. Corp.*, 606 B.R. 169, 184 (Bankr. E.D.N.Y. 2019) (noting that "Courts examining the reach of the *Rooker–Feldman* doctrine have concluded that it has little to no application in the context of avoidance actions under the Bankruptcy Code.").

Here, the *Rooker–Feldman* doctrine does not bar this Court's review of three of the alleged claims that the Plaintiff has asserted in her Complaint: 1) a preferential transfer pursuant to 11 U.S.C. § 547, 550, and 551; 2) a constructively fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B); and 3) a fraudulent transfer pursuant to Connecticut General Statutes § 52-552e(a). These claims are not those of a party who did not prevail complaining of injuries resulting from a state court judgment entered prior to the commencement of this federal suit and inviting review of that judgment. The *Rooker–Feldman* doctrine does not bar this Court's review of an allegedly fraudulent or preferential transfer, as the attendant federal and state statutes specifically authorize such review. The *Rooker–Feldman* doctrine "has little to no application in the context of avoidance actions under the Bankruptcy Code." *In re Jadeco Constr. Corp.*, 606 B.R. at 184. Accordingly, this Court has subject matter jurisdiction over those three claims.

The Court does not, however, have subject matter jurisdiction over the Plaintiff's claim for unjust enrichment and accordingly this claim must be dismissed. "Foreclosure is an equitable action permitting the trial court to examine

9

all matters to ensure that complete justice may be done. *Hartford Fed. Sav. & Loan Ass'n. v. Lenczyk*, 153 Conn. 457, 463. The determination of what equity requires in a particular case, and the balancing of the equities[,] is a matter for the discretion of the trial court. *Kakalik v. Bernardo*, 184 Conn. 386, 395." *Webster Bank v. Haddad*, No. 320529, 1996 WL 156007 at *3 (Conn. Super. Ct. Mar. 15, 1996). "The confirmation of a foreclosure sale is a final determination that the mortgaged property was sold at a fair price." *See Central Bank for Sav. v. Heggelund*, 23 Conn. App. 266, 271, 579 A.2d 598 (1990) (citing *Cronin v. Gager-Crawford Co.*, 128 Conn. 688, 693, 25 A.2d 652 (1942)).[5]

Meanwhile, "[a] right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another . . . Plaintiffs seeking recovery for [claims based upon] unjust enrichment must prove (1) that the defendants were benefitted, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Town of New Hartford v. Conn. Res. Recovery Auth.*, 291 Conn. 433, 451–52, 970 A.2d 592 (2009).

---

[5] The Appellate Court therein also specifically noted that the defendant to the foreclosure action did not appeal the approval of the sale nor seek to reach an agreement with the bank to forestall a motion for deficiency when his property was valued at $300,000 but was sold for a price of $50,000. *Id.* at 271.

    *See also* Dennis R. Caron, CONNECTICUT FORECLOSURES: AN ATTORNEY'S MANUAL OF PRACTICE AND PROCEDURE § 21-3:1("Foreclosures by Sale") (noting that "[a] foreclosure sale in Connecticut . . . proceeds under the authority and scrutiny of the Superior Court" and that "[o]ne of the elements of judicial review is the evaluation of the adequacy of the result," and emphasizing that such an issue is one that can appropriately be raised in an appeal from the approval of the sale).

Claims for unjust enrichment pertaining to prior foreclosure actions are frequently barred by the *Rooker–Feldman* doctrine. *See Lewis v. Guardian Loan Co.*, 2019 WL 3938150 at *2, n.3 (D. Conn. Aug. 20, 2019) (concluding that a plaintiff's claims for unjust enrichment were barred under the *Rooker–Feldman* doctrine, and noting that "it is well settled that a federal plaintiff may not escape application of the *Rooker–Feldman* bar by relying on legal theories not raised in state court."); *Nino v. JPMorgan Chase Bank, N.A.*, 202 WL 1532369 at *6 (D. Conn. Mar. 31, 2020) (concluding that a plaintiff's claim for unjust enrichment failed under *Rooker–Feldman* and res judicata because "[t]he validity of the mortgage and plaintiff's obligation to repay the loan have already been established in state court," and the "plaintiff would have to prove that the . . . loan was invalid and that her mortgage payments were therefore made without any obligation" in order to prevail); *Coughlin v. Eastern Sav. Bank*, 2015 WL 687450 (D. Conn. Feb. 17, 2015) (concluding that a claim for unjust enrichment merely sought "to attack the judgment issued in the foreclosure action" and accordingly that the *Rooker–Feldman* doctrine barred the court from hearing the claim).

Here, the Superior Court clearly concluded that the foreclosure proceeding – an equitable action – comported with equity when it entered the Judgment of Foreclosure by Sale, an order Approving the Sale, and subsequently its Supplemental Judgment ratifying the sale based on Nationstar's bid. In issuing its rulings, the Superior Court necessarily considered both the equities between the parties and the statutory scheme governing foreclosures in Connecticut. The

11

Plaintiff's claim for unjust enrichment now invites this Court to review that judgment, but such invitations are barred by the *Rooker–Feldman* doctrine. Accordingly, this Court does not have subject matter jurisdiction over Count Four and it is dismissed with prejudice.

### b. Standards Governing Motions to Dismiss for Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), made applicable to this Adversary Proceeding by Federal Rule of Bankruptcy Procedure 7012(b), a party may move to dismiss a cause of action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss, the Court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the Plaintiff's favor. *See Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008). To survive a motion to dismiss, the Plaintiff must allege facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is made "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plaintiff must show 'more than a sheer possibility that a defendant has acted unlawfully,' *id.*, and cannot rely on mere 'labels and conclusions' to support a claim. *Twombly*, 550 U.S. at 555. If the Plaintiff's pleadings 'have not nudged their claim across the line from conceivable to plausible, their complaint must be dismissed.' *Id.* at 570." *Cameron v. PHH Mortg. Corp., et al. (In re Cameron)*, Ch. 7 Case No. 16-

21256 (JJT), Adv. No. 17-02033 (JJT), 2018 WL 683714 at *4 (Bankr. D. Conn. Feb. 1, 2018).

"[W]hen considering a motion to dismiss, the Court may only consider 'the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken.' *Samuels v. Air Transp. Local*, 992 F.2d 15 (2d Cir. 1993). 'In considering a res judicata defense, a court may [take] judicial[] notice [of] prior pleadings, orders, judgments, and other items appearing in the court records . . . that are related to the case before the court.' *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F.Supp.2d 140, 144 (D. Conn. 2005)." *Id.*

The Court now turns to whether the remaining Counts must be dismissed, either because they are barred by the doctrines of res judicata or collateral estoppel, or because they fail to state a claim under Federal Rule of Civil Procedure 12(b)(6).

### c. Res Judicata

The Plaintiff's three remaining Counts pertaining to whether the foreclosure sale constituted a fraudulent or preferential transfer are not barred by the doctrine of res judicata.

Under Connecticut law,[6] four elements must be met for res judicata to apply: 1) the judgment must have been rendered on the merits by a court of competent jurisdiction; 2) the parties to the prior and subsequent actions must be the same or

---

[6] "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Accordingly, Connecticut law applies here in assessing both the doctrines of collateral estoppel and res judicata.

in privity; 3) there must have been an adequate opportunity to litigate the matter fairly; and 4) the same underlying claim must be at issue. *Wheeler v. Beachcroft, LLC*, 320 Conn. 146, 156–57, 129 A.3d 677 (2016). *See also Tirozzi v. Shelby Ins. Co.*, 50 Conn. App. 680, 686–87, 719 A.2d 62. "[R]es judicata prevents reassertion of the same claim 'regardless of what additional or different evidence or legal theories might be advanced in support of it.'" *Wheeler*, 320 Conn. at 157 (citing *Delahunty v. Massachusetts Mut. Life Ins. Co.*, 236 Conn. 582, 589, 674 A.2d 1290 (1996)).

In *In re Fitzgerald*, 237 B.R. 252 (Bankr. D. Conn. 1999), the Court similarly concluded that res judicata was inapplicable when considering a claim concerning the allegedly fraudulent transfer of a property through a mortgage foreclosure. The Court wrote, "claim preclusion is inapplicable here to bar the adjudication of the Avoidance Action because, among other reasons, a fraudulent transfer claim was not and could not have been litigated in the Foreclosure Action and, in any event, Connecticut does not impose a compulsory counterclaim rule, *see* Conn. Practice Book §§ 10-10, 10-54." *Id.*, 265 n.16.

Here, the Court similarly concludes that the doctrine of res judicata does not bar the instant avoidance action. The same underlying claims are not at issue here as were at issue in the earlier Superior Court foreclosure action. Nor did the Debtor have an adequate opportunity to litigate these matters, including federal claims pursuant to the Bankruptcy Code, before the Superior Court. Accordingly, this Court concludes that the Debtor's claims are not barred by the doctrine of collateral estoppel.

14

Although the Plaintiff's claim for unjust enrichment is barred by the *Rooker–Feldman* doctrine, the Court concludes that this claim would also be barred by the doctrine of res judicata. The four requirements of collateral estoppel are met as to this claim: 1) the judgment was rendered on the merits by the Connecticut Superior Court – a court of competent jurisdiction; 2) the parties to this action and the prior action are the same; 3) the Plaintiff had an opportunity to litigate the matter fairly given that the equities between the parties were a central focus of the Superior Court in that equitable proceeding; and 4) the same issue concerning the balance of the equities that was at issue in the prior case is now again at issue.

The Connecticut Supreme Court has stated that "[f]oreclosure is an equitable action permitting the trial court to examine all matters to ensure that complete justice may be done." *Hartford Federal Savings & Loan Assn. v. Lenczyk*, 153 Conn. 457, 463. Further, "The determination of what equity requires in a particular case, and the balancing of the equities[,] is a matter for the discretion of the trial court." *Kakalik v. Bernardo*, 184 Conn. 386, 395." *Webster Bank v. Haddad*, No. 320529, 1996 WL 156007 (Conn. Super. Ct. Mar. 15, 1996). Connecticut courts often therefore address claims for unjust enrichment raised during foreclosure proceedings. *See Bank of Am. v. AGCPP Greenwich Atrium Owner, LLC*, No. FSTCV096002438S, 2010 WL 4886778, at *3–4 (Conn. Super. Ct. Nov. 5, 2010) ("The plaintiff argues that the legal theory of unjust enrichment cannot be raised as a defense in a foreclosure action. However, the theory of unjust enrichment is an equitable remedy available to redress actions contrary to equity and good conscience

that permit one party to obtain a benefit at the expense of another.") (citing *Polveri v. Peatt*, 29 Conn. App. 191, 200, 614 A.2d 484, *cert. denied*, 224 Conn. 913, 617 A.2d 166 (1999)). Accordingly, this Court concludes that the Plaintiff certainly had an opportunity to litigate this matter fairly before the trial court and should have done so.

Bolstering this conclusion, this Court notes that Federal Courts similarly conclude that claims of unjust enrichment raised regarding prior and concluded foreclosure actions are barred by the doctrine of res judicata. *See Borrani v. Nationstar Mortg. LLC*, 820 Fed. Appx. 20 (2d Cir. 2020) (concluding that claims for unjust enrichment "arose from the same factual grouping that supported [the plaintiff's] defenses in the state foreclosure case," and thus that "[b]ecause [the plaintiff] had an opportunity to raise these issues in the state foreclosure action and that case was decided on the merits, her substantially identical claims . . . [were] barred by res judicata."); *Williams as Tr. for Est. of Williams v. Countrywide Bank*, No. 3:18-CV-2007 (VAB), 2020 WL 4059883, at *12 (D. Conn. July 19, 2020) (concluding that a claim for unjust enrichment pertaining to wrongfully withheld insurance proceeds, which caused the plaintiff to incur additional loans or mortgages, was barred by the doctrine of res judicata as the plaintiff litigated or should have litigated those claims in the state court foreclosure proceeding); *Fink v. Magner*, 988 F. Supp. 74, 80 (D. Conn. 1997) (dismissing a claim for unjust enrichment as barred by the doctrine of res judicata when "the issues, although not identical, [were] so related in time, space and relation that [the plaintiff] should

have litigated all the causes of action together in one proceeding."); *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 510–11 (S.D.N.Y. 2016) (concluding that the issue of allegedly uncredited payments should have been raised in the foreclosure action itself and dismissing the plaintiff's claim for unjust enrichment, among others, based on the doctrine of res judicata).

### d. Collateral Estoppel

Similarly, the Plaintiff's three Counts pertaining to whether the foreclosure sale constituted a fraudulent or preferential transfer are not barred by the doctrine of collateral estoppel.

Under Connecticut law:

> [C]ollateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. . . . An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . To assert successfully the doctrine of issue preclusion, therefore, a party must establish that the issue sought to be foreclosed actually was litigated and determined in the prior action between the parties or their privies, and that the determination was essential to the decision in the prior case. (Internal quotation marks omitted.)

*Doran v. First Connecticut Cap., LLC*, 143 Conn. App. 318, 321, 70 A.3d 1081. Accordingly, "'[t]o establish whether collateral estoppel applies, the court must determine what facts were necessarily determined in the first trial, and must then assess whether the [party] is attempting to relitigate those facts in the second proceeding.' *State v. Hope*, supra, 215 Conn. at 584, 577 A.2d 1000." *Aetna Cas. & Sur. Co. v. Jones*, 220 Conn. 285, 297, 596 A.2d 414, 421 (1991).

Again in *In re Fitzgerald*, 237 B.R. 252 (Bankr. D. Conn. 1999), the Court faced a similar set of circumstances when a Debtor commenced a Chapter 13 bankruptcy case after a mortgagee recorded a certificate of foreclosure. The Debtor filed a Motion to Open the Judgment with the foreclosure court and an Avoidance Action with the Bankruptcy Court. When the mortgagee asserted that the Debtor was collaterally estopped from challenging the foreclosure judgment, the Court observed that "the relevant issues in the Foreclosure Action and the Avoidance Action are not 'in substance the same' for collateral estoppel purposes." *Id.*, 264. In so concluding, the Court noted that in assessing the necessity of foreclosure by sale entails the application of a different standard than that used to determine whether a transfer was for "reasonably equivalent value" within the purview of 11 U.S.C. § 548. *Id.*

Here, the Court similarly concludes that the issues are not the same in substance as those litigated before the Superior Court in the foreclosure action. The issue that Nationstar seeks to foreclose the Debtor from asserting – whether the sale of the Property was a fraudulent transfer or preferential transfer – is not an issue that was actually litigated and determined in the prior action between the parties. The Superior Court assessed whether the Debtor had defaulted on her mortgage, what equity remained in the Property, and the propriety of permitting a foreclosure and approving and ratifying the sale.[7] Whether such a transfer would

---

[7] In Connecticut, "[i]t is generally recognized that the grounds which would warrant a court's refusal to approve a sale are fraud, misrepresentation, surprise or mistake." (Internal quotation marks omitted.) *Wilcox v. Willard Shopping Center Associates,* 23 Conn. App. 129, 133, 579 A.2d 130 (1990); *Jefferson v. Karpowicz,* 10 Conn. App. 198, 200, 522 A.2d 322 (1987).

violate the Bankruptcy Code or Connecticut General Statutes § 52-552e(a) is not an issue that was actually and necessarily determined by the Superior Court when these parties were before it. Accordingly, this Court concludes that the Debtor is not collaterally estopped from asserting these claims.[8]

### e.  Failure to State a Claim

The Court now turns to Nationstar's contentions that the Debtor has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

The Court first addresses Count Two of the Complaint. Therein, the Debtor asserts that the transfer of the Property constitutes a fraudulent conveyance pursuant to 11 U.S.C. § 548(a).

Under 11 U.S.C. § 548(a):

> (1) The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily— . . .
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>     (ii) (i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation . . . .

The Debtor's primary contention is that because Nationstar bought the Property for only $146,853.41 after the Committee of Sale found its value to be $285,000.00 in

---

[8] Although the Plaintiff's claim for unjust enrichment is barred by the *Rooker–Feldman* doctrine, the Court has concluded that this claim is equally barred by the doctrine of collateral estoppel as the Plaintiff asks the Court to examine the equities between the parties to the foreclosure action when the Plaintiff not only had the opportunity to litigate this matter fairly, but also when those issues were actually and necessarily determined by the Superior Court.

Given that foreclosure proceedings in Connecticut are equitable actions and that the Superior Court ratified the sale, this Court concludes that the Superior Court necessarily must have assessed the same issue there as the Plaintiff asks this Court to assess here: the balance of equities between the parties and whether unjust enrichment would result from the approval of the sale.

connection with the judgment, the Debtor thereby "received less than a reasonably equivalent value in exchange for the transfer" per 11 U.S.C. § 548(a)(1)(B)(i).

The Supreme Court, however, has plainly held that such a sale does not violate 11 U.S.C. § 548.[9] In *BFP v. Resol. Tr. Corp.*, the Supreme Court considered a comparable set of circumstances as those here and "decline[d] to read the phrase 'reasonably equivalent value' in § 548(a)(2) to mean, in its application to mortgage foreclosure sales, either 'fair market value' or 'fair foreclosure price' . . . ." Instead, the Supreme Court concluded that "a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." 511 U.S. 531, 545, 114 S.Ct 1757 (1994). Here, the Debtor has not alleged that any of the regular procedural requirements of Connecticut's foreclosure laws were not complied with during the sale of the Property, or that the sale was collusive.[10] Accordingly, the Debtor cannot prevail in claiming that the transfer of the Property violated § 548 merely because it was sold for less than the Property's fair market value of $285,000.000. Count Two of the Complaint is therefore dismissed with prejudice because it fails to state a claim.

The Court next turns to Count Three of the Complaint, wherein the Debtor similarly claims that the sale of the Property constituted a fraudulent transfer

---

[9] Notwithstanding the Debtor's status as a pro se litigant in the Superior Court proceedings and her ostensibly commendable but belated objective to salvage the value of her home, the arguments of unfairness advanced by the Debtor are legally unsupportable. The alleged harshness of Supreme Court precedent is not a tenable basis for this Court to ignore its rulings with regard to a fraudulent conveyance claim.

[10] Indeed, this Court surmises that without such allegations of collusion or noncompliance, such claims in this context border on frivolous.

within the meaning of Connecticut General Statutes § 52-552e(a)(2)[11] and § 52-552f(a).[12] Under either statute, the Debtor's claim again centers on whether she received "a reasonably equivalent value" for the Property when it was sold to Nationstar for only $146,853.41 after having been appraised at $285,000.00.

Section 52-522d(b) states, "For the purposes of subdivision (2) of subsection (a) of section 52-552e and section 52-552f, a person gives a reasonably equivalent value if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, noncollusive foreclosure sale or execution of a power of sale for the acquisition or disposition of the interest of the debtor upon default under a mortgage, deed of trust or security agreement."[13]

---

[11] Section 52-552e(a) states, "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: . . . (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."

[12] Section 52-552f(a) states: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."

[13] The Connecticut Supreme Court has noted that "[a] foreclosure by sale may result in bids not only less than the appraised value of the property, but even less than the foreclosing mortgagee's loan, allowable expenses and taxes. Because the trial court has control of the foreclosure proceedings, it can, in the exercise of its discretion, accept or reject a proposed sale.' *Fidelity Trust Co. v. Irick,* 206 Conn. 484, 490, 538 A.2d 1027 (1988)." *First Nat. Bank of Chicago v. Maynard,* 75 Conn. App. 355, 361 (2003).

However, the Connecticut Supreme Court has also echoed the rationale of *BFP* regarding the determination of fair market value when a foreclosure sale takes place: "[T]he usual notion of fair market value is inconsistent with the notion of a foreclosure sale. [F]air market value is generally said to be the value that would be fixed in fair negotiations between a desirous buyer and a willing seller, neither under any undue compulsion to make a deal. . . . An auction sale, such as a foreclosure sale, is not designed to reach that result because there is no opportunity for negotiations, and the seller, namely, the committee appointed by the trial court to conduct the sale, *is* under compulsion to make a deal, in the sense that it is required to take the highest bid, subject only to the approval of the court.' . . . *New England Savings Bank v. Lopez,* 227 Conn. 270, 280, 630 A.2d 1010 (1993); *see*

Again, the Debtor has not alleged that the foreclosure sale at issue here was not regularly conducted, nor was it collusive. Accordingly, the Debtor plainly cannot prevail in claiming that the transfer of the Property violated § 52-552e(a) or § 52-552f(a) because it was sold for less than the Property's fair market value of $285,000.000. Count Three of the Complaint is therefore dismissed with prejudice because it fails to state a claim.[14]

Lastly, the Court turns to Count One, wherein the Debtor asserts that the sale of the Property constitutes a preferential transfer pursuant to 11 U.S.C. § 547(b) and that its additional value is thereby recoverable pursuant to 11 U.S.C. §§ 550 and 551.

Section 547(b) states:

Except as provided in subsections (c) and (i) of this section, the trustee may, based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c), avoid any transfer of an interest of the debtor in property—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or

---

also *New Haven Savings Bank v. West Haven Sound Development,* 190 Conn. 60, 71, 459 A.2d 999 (1983)." *Id.*

[14] Furthermore, although the Plaintiff's claim for unjust enrichment is barred by the *Rooker–Feldman* doctrine, the Court also concludes that this count of the Complaint fails to state a claim. Recall that "[a]lthough unjust enrichment is an equitable doctrine, its powers are not so unlimited as to allow a remedy against a purchaser of property at a sale expressly allowed by law." *Birnberg*, 1998 WL 422104 at *3. Here, the Superior Court entered Judgment of Foreclosure by Sale and subsequently entered a Supplemental Order ratifying the sale. The Plaintiff has not alleged that this sale was not expressly allowed under Connecticut foreclosure law and the Superior Court's judgment in this equitable action inherently included assessment of the equities between the parties. Accordingly, the Plaintiff has failed to state a claim for unjust enrichment.

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The Second Circuit heretofore has not had occasion to consider whether preferential transfers under § 547(b) are subject to the same affirmative parameters imposed on fraudulent transfers by the Supreme Court in *BFP*, nor have any of the Bankruptcy Courts over which the Second Circuit has jurisdiction. Accordingly, this Court will survey and examine the opinions from other jurisdictions that may be illuminating and persuasive on this issue.

Several courts have held that *BFP* does not apply to claims under § 547(b) and that such transfers therefore are avoidable. For example, in *In re Hackler & Stelzle-Hackler*, 938 F.3d 473, 479 (3d. Cir. 2019), the Third Circuit concluded that *BFP* was inapplicable to the case before it concerning whether a tax foreclosure constituted a preferential transfer under § 547(b). In so concluding, the Court particularly considered that the Supreme "Court's decision in *BFP* . . . is closely tied to both the language of § 548 and the mechanics of mortgage foreclosures." *Id.* "Given that the term 'reasonably equivalent value' does not appear in § 547(b), and in light of the divergent procedures and attendant considerations in tax foreclosure proceedings in New Jersey," the Third Circuit found "*BFP* inapplicable to th[at] case." *Id.* Many courts have come to the same conclusion as the Third Circuit,

primarily based on the fact that no statutory ambiguity exists in § 547(b) because the standard of "reasonably equivalent value" does not appear in the statute.[15]

Several other courts have concluded that *BFP* does apply when considering whether a transfer is avoidable under § 547(b). These courts primarily express the public policy concern that permitting noncollusive foreclosures conducted in accordance with state law to be avoided as preferential transfers will result in calamity. *See In re Cottrell*, 213 B.R. 378, 383 (Bankr. M.D. Ala. 1996); *In re FIBSA Forwarding, Inc.*, 230 B.R. 334, 341 (Bankr. S.D. Tex. 1999), *aff'd*, 244 B.R. 94 (S.D. Tex. 1999); *Chase Manhattan Bank v. Pulcini* (*In re Pulcini*), 261 B.R. 836 (Bankr. W.D. Pa. 2001).

Here, this Court agrees with the aforementioned opinions that conclude that *BFP* does not present an unequivocal, per se bar to a claim that a foreclosure may be a preference under § 547. Given that the phrase "reasonably equivalent value" does not appear in § 547, this Court concludes that the Supreme Court's rationale and conclusion in *BFP* does not apply to claims thereunder. Instead, allegedly preferential transfers under § 547 require inquiry into the specific facts underlying the transfer to determine whether a creditor received more as a result of the transfer than it would have received in a hypothetical Chapter 7 liquidation, as this

---

[15] *See In re Andrews*, 262 B.R. 299 (Bankr. M.D.Pa. 2001); *In re Villareal*, 413 B.R. 633, 642 (Bankr. S.D. Tex. 2009); *In re Whittle Dev., Inc.*, 463 B.R. 796, 801 (Bankr. N.D.Tex. 2011); *In re Berley Assoc., Ltd.*, 492 B.R. 433 (Bankr. D.N.J. 2013); *In re Nguyen*, 490 B.R. 230, 234 (Bankr. S.D.Tex. 2013); *In re Silver State Holdings, Assignee-7901 Boulevard 26 LLC*, No. 19-41579-MXM, 2020 WL 7414434 at *14-17 (Bankr. N.D. Tex. Dec. 17, 2020), aff'd No. 21-10212, 2022 WL 3755778 (5th Cir. Aug. 30, 2022); *In re Nunez*, 635 B.R. 870, 876 (Bankr. S.D.Fla. 2021); *In re Tucker*, No. 21-16213-MCR, 2022 WL 4829845 at *13 (Bankr. D. Md. Oct. 1, 2022), aff'd in part, vacated in part, 653 B.R. 598 (D. Md. 2023).

is the standard Congress has imposed. Should public policy concerns arise, Congress can certainly rectify such a calamity, but this Court will not read into § 547 a standard that does not appear in the plain text of the statute.

Further, given the requirement to take all well-pleaded facts as true, Nationstar cannot rebut, in this procedural context, the Debtor's claim that Nationstar may have received more as a result of the foreclosure sale than it would have in a hypothetical Chapter 7 liquidation. Accordingly, Count One of the Complaint states a sufficient claim to survive the Motion to Dismiss.[16]

### 4. Conclusion

For the reasons expressed above, the Court GRANTS the Motion to Dismiss with prejudice as to Counts Two, Three, and Four, but DENIES the Motion to Dismiss as to Count One.

IT IS SO ORDERED at Hartford, Connecticut this 16th day of April 2025.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut

---

[16] The Court makes no statement about any other defenses Nationstar may have with regard to Count One at later stages of litigation.